IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAISY LARCENA WALKER** : | |
| : | |
| v. : | **CIVIL ACTION NO. 20-4966** |
| : | |
| **FOREMOST INSURANCE COMPANY** : | |
| **GRAND RAPIDS, MICHIGAN and** : | |
| **DEBRA ELAINE TUCKER** : | |

**McHUGH, J.**                                                                                                        **March 2, 2022**

### MEMORANDUM

This case involves an insurance coverage dispute. It began when a tree fell and caused damage to an adjacent property. The insured premises were used as a rental property, and the policy issued was one tailored for landlords, with various coverage options, not all of which were selected. Given where the damage occurred and the language of the policy, I am compelled to conclude that coverage does not exist. I will therefore grant the carrier and agent's Motion for Summary Judgment and deny Plaintiff's Cross-Motion.

**I.**     **Background**

The facts set forth in this background and procedural history were adopted from the parties' joint statement of material facts ("JSMF"). ECF 26. Ms. Daisy Walker is an adult individual domiciled in Pennsylvania. JSMF ¶ 2. Defendants are Foremost Insurance Company Grand Rapids, Michigan, a Michigan insurance company organized under the laws of and domiciled in Michigan, *id.* ¶ 1, and Debra Elaine Tucker, a New Jersey resident who acts as an independent insurance agent for Foremost, *id.* ¶ 5. Ms. Walker owns a single-family home at 3425 West School House Lane, Philadelphia, Pennsylvania 19129 (the "Insured Property"),

which she rents out to tenants. *Id.* ¶ 3. Ms. Walker's daughter, Cheryl Walker-Robertson, manages the Insured Property on her behalf. *Id.* ¶ 4.

  A. <u>The Insurance Claims and Relevant State Court Proceedings</u>

The Insurer issued a Dwelling Fire Three Policy Landlord, Form 11303 03/13, policy number 5002088131 ("the Policy"), to Ms. Walker with an initial policy term beginning on February 8, 2018 and ending on February 8, 2019. *Id.* ¶ 6. The Policy was renewed and in force for the subsequent term of April 11, 2019 to April 11, 2020. *Id.* Ms. Tucker was the agent who received the completed renewal application from Ms. Walker-Robertson and who assisted with issuing the Policy. *Id.* ¶ 8.

On October 16 or 17, 2019, a branch from a tree located on the Insured Property fell on the Insured Property and on the adjoining property located at 3421 West School House Lane, Philadelphia, PA 19129 ("the Neighboring Property"). *Id.* ¶ 9. Janet Grace, the owner of that property, claimed the fallen tree branch caused damage to her property. *Id.* ¶ 11. The alleged damage on the Neighboring Property all occurred within approximately twenty feet of the tree. *Id.* ¶ 15.

On October 23, 2019, a claim was submitted under the Policy on behalf of Mrs. Walker for damage allegedly caused by the fallen tree branch on both the Insured Property and the Neighboring Property. *Id.* ¶ 18. Shortly thereafter, Foremost sent letters to both Ms. Grace and Ms. Walker, explaining that Ms. Walker's Policy did not cover damage to the Neighboring Property. *Id.* ¶¶ 19-20. Ms. Grace had her own insurance policy for the Neighboring Property issued by State Farm Fire and Casualty Company that insured Ms. Grace for most of the damages. *Id.* ¶ 23.

On November 20, 2019, Ms. Grace filed a civil action in the Philadelphia Municipal Court against Ms. Walker for damages. *Id.* ¶ 21. She sought $8,768.88, which apparently reflected the $2,589 deductible on her homeowner's insurance policy with State Farm, $1,750 for debris removal, $49.98 for replacement of a holly tree, $159.90 for two crepe myrtle trees and $4,220 for lost premium reductions due to her having no claims for ten years.[1] *Id.* ¶ 22. Mrs. Walker settled the Municipal Court claim for $4,339 on January 6, 2020. *Id.* ¶ 26. In that action, Foremost declined to reimburse Mrs. Walker for the settlement and costs of defense in the Municipal Court Claim, stating that her "policy does not provide coverage for this loss." *Id.* ¶ 29.

State Farm subsequently demanded subrogation from Mrs. Walker for $26,318.67 it paid in connection with Ms. Grace's claim under her homeowners' policy with State Farm. *Id.* ¶ 30. It then filed a subrogation complaint against Ms. Walker and Ms. Walker-Robertson in the Court of Common Pleas of Philadelphia County on September 10, 2020 (the "Subrogation Action"). *Id.* ¶ 32. On September 29, 2020, counsel for Mrs. Walker notified Foremost of the Subrogation Action and demanded that Foremost provide the necessary defense and/or indemnification in connection with the Subrogation Action. *Id.* ¶ 33. Foremost is presently defending Ms. Walker in the Subrogation Action pursuant to a reservation of rights. *Id.* ¶ 34.

B. <u>Relevant Policy Language</u>[2]

The Policy lists two section of coverages. "Section I Coverages" as listed on the Declarations Page include "A. Dwelling," "C. Personal Property," and "D. Loss of Rents."

---

[1] Ms. Grace had submitted a claim to State Farm for damages she claimed resulted from the Incident, but the claims at issue in the Municipal Court apparently reflected expenses that State Farm did not cover. JSMF ¶ 23.

[2] The Policy is included as an exhibit to the Joint Statement of Material Facts at ECF 26-1.

ECF 26-1, at 11.  For each, the Declarations Page lists the coverage option, amount of insurance, and annual premium.  Significantly, there is no coverage listed for Option "B.  Other Structures."  The Declarations Page then proceeds to list "Section II Coverages," including "F.  Premises Liability" and "G.  Medical Payments."  ECF 26-1, at 11.

The Policy further describes "Coverage A – Dwelling," as relevant here, to insure: "1. The dwelling that is described on the Declarations Page… 3.  Any structure you own that is attached to that dwelling."  ECF 26-1, at 30.  Coverage A further notes "[b]ut we do not insure: 1.  fences."  Under "Your Additional Coverages" applicable to "Coverage A – Dwelling" is listed the limits of insurance provided for damage to "Trees, Shrubs, Plants and Lawns."  ECF 26-1, at 33.  As already noted, "Coverage B – Other Structures" was not selected by Ms. Walker.  When it is selected, the policy required that such "other structures" be listed on the Declarations Page.  ECF 26-1, at 31.  No "other structures" were so listed.

"Coverage F – Premises Liability" is defined to provide coverage "[i]f a claim is made against you for damages because of **bodily injury** or **property damage** caused by an accident on your **premises**."  ECF 26-1, at 39 (emphasis in original).  The Policy further explains that "Coverage F – Premises Liability applies to **bodily injury** and **property damage** only if the **bodily injury** or **property damage** occurs on your **premises** … ."  ECF 26-1, at 39 (emphasis in original).

The Policy defines "premises" to mean:

1. The dwelling and other structures that are described on the Declarations Page;
2. The sidewalks, driveways or other private approaches that serve that dwelling and other structures, and
3. The grounds that are immediately adjacent to that dwelling and other structures.

4

ECF 26-1, at 2.  To prevail in this action, Ms. Walker would have to prove that property damage to Ms. Grace's pool and shrubbery occurred on Ms. Walker's insured "premises," which in turn depends on whether it can be said that Grace's property is "immediately adjacent" to the can be "dwelling and other structures" the policy insures.

## II. Standard of Review

These motions are governed by the well-established standard for summary judgment set forth in Fed. R. Civ. P. 56(a), as described by *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  That standard does not change when the parties cross-move for summary judgment, with each party's motion to be determined on its own merits in accordance with the Rule 56 standard. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F. 3d 388, 402 (3d Cir. 2016).  Under Pennsylvania law, the interpretation of an insurance contract is a matter of law for the court. *Lexington Ins. v. Western Penn. Hosp.*, 423 F.3d 318, 323 (3d Cir. 2005).

## III. Discussion

### A. Count I (Breach of Contract) and Count III (Declaratory Judgment)

Plaintiff Ms. Walker's contention that the Policy covered the damage to the Neighboring Property caused by the accident rests on a series of tenuous inferences of fact and contractual interpretation.  Plaintiff's core argument is that the fence between the properties is partially on her land, with the result that the policy term "your premises" must be extended to include the Neighboring Property because it is "adjacent to" an "other structure," *i.e.* the fence. I first conclude that any factual dispute over the location of the fence isn't genuine because Plaintiff has not brought forth evidence from which a reasonable jury could find in her favor as to the location of the fence. Second, even if Plaintiff's limited evidence as to the location of a single fence post created a genuine dispute, the fence does not constitute an "other structure" under the

language of the Policy which makes its location immaterial to the outcome.  Defendants are therefore entitled to judgment as a matter of law.

    *1. The absence of a material issue of fact*

In support of a finding that the fence was on the Neighboring Property, Defendants have submitted a property survey conducted in August 2021 by Jonathan Tabas, a registered professional surveyor. ECF 36. Mr. Tabas concluded that the "fence is located entirely on the Grace property except for the portion adjacent to the 40" Tree, which coincides with the limited portion of the fence that was destroyed by the branch falling from the 40" Tree on October 16-17, 2019." ECF 36, at 1. His schematic shows the rebuilt section of the fence along the property line. *Id.* Regarding the rebuilt portion of the fence, he notes that "[t]here was no evidence in the field that showed the location of the fence prior to" its destruction by the fallen tree branch, *id.,* and thus no physical evidence that any portion of the fence was located on the Walker property at the time of the accident.

Defendant also submits an email from Ms. Grace to Ms. Walker-Robertson two months after the accident.  In the email, Ms. Grace asserts ownership and control over the fence. Specifically, she advised Ms. Walker-Robertson that she was ejecting the workers whom Ms. Walker-Robertson had hired to repair the fence because the fence "is 6" into my property line, as I had the property surveyed before," further advising that Ms. Grace would be hiring her own contractor to repair the fence.  ECF 25-1, Ex. B.

Ms. Walker's principal evidence to rebut this consists of affidavits from herself, ECF 27-3, and her daughter, Ms. Walker-Robertson, ECF 33.[3] The affidavits contain conclusory

---

[3] The affidavit of Ms. Walker-Robertson was not filed contemporaneously with the Plaintiff's Cross Motion for Summary Judgment / Response to Defendants' Motion for Summary Judgment, but all parties have had an opportunity to brief the relevance of the affidavit since its filing.

statements that are repeated in both. These virtually identical paragraphs aver that Ms. Walker and Ms. Walker-Robertson had the "understanding that although the Fence is located on the property line, some sections of the Fence may be located on the Walker Property and some sections of the Fence may be located on the Grace Property," ECF 27-3 ¶ 5 and ECF 33 ¶ 5. Ms. Walker avers an understanding that she was "responsible for the maintenance of the Fence because most if not all of it is located on the Walker Property." ECF 27-3 ¶ 6. Ms. Walker-Robertson similarly avers an understanding "that [her] mother is responsible for the maintenance of the Fence because most if not all of it is located on the Walker Property," ECF 33 ¶ 6.

Ms. Walker's affidavit was dated May 26, 2021. She was later deposed on August 26, 2021. Defendants have submitted the transcript of her deposition, pointing out that she was unable to provide any underlying factual bases for the statements in her affidavit. Walker Dep. 12:25-14:5, 15:18-16:21, 18:3-17,[4] ECF 35.[5] The affidavit submitted by Plaintiff's daughter, Ms. Walker-Robertson, does not cure these deficits. Despite her role managing the property, Ms. Walker-Robertson's affidavit does not speak to the construction of the fence, to any maintenance undertaken to the fence, or to any other indicia that might prove the fence was owned or otherwise controlled by Ms. Walker or ran within her property lines.

Plaintiff also attached to her reply brief an affidavit of one Henry Mirabile, III, and several photographs that he took of the property line of stakes and ribbons purportedly set there by the surveyor the previous week. ECF 39-1. "An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, or set out facts

---

[4] The transcript pages are unnumbered. I have treated page 1 as the first page of the transcript.

[5] The situation here is not the same as a "sham affidavit," filed after a deposition to contradict the witness' testimony. *Martin v. Merrell Dow Pharmaceuticals*, 851 F.2d 703, 706 (3d Cir. 1988). But similar principles apply. An affidavit stating broad conclusions cannot create a material issue of fact where the affiant when questioned cannot provide any specific facts providing a basis for the conclusions.

that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If Mr. Mirabile's affidavit was limited to describing the location of the photos that he attached to it, his testimony might be admissible, albeit not particularly enlightening. But the affidavit is replete with vague observations about his interpretation of what the surveyor's stakes and ribbons based upon photographs of the site. Mr. Mirabile does not attest to any credentials, expertise, or experience that would qualify him to render any opinions as to the import of these markers. The proper means to establish Mr. Mirabile's competence is through FRE 702, and Plaintiff has not advanced him as an expert. Finally, even assuming some qualifications on the part of the witness, it is difficult to discern what Plaintiff seeks to establish. The one conclusion that seems to emerge is that, as to the *rebuilt* section of the fence, one-half inch might fall on the Walker side of the property line. ECF 39-1, ¶¶ 20-21. Given the property line as confirmed by a certified surveyor and the undisputed evidence that all the undamaged sections of the fence ran within the Grace property, any minimal *post hoc* intrusion is immaterial.

    *2. The policy would not provide coverage regardless of the location of the fence.*

"A fact is only material if it might affect the outcome of the suit under the governing law." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019). I separately conclude that any dispute as to the location of the fence does not affect coverage. "The interpretation of an insurance contract is a question of law." *Clarke v. MMG Ins. Co.*, 100 A.3d 271, 275 (Pa. Super. Ct. 2014) Courts must enforce the plain meaning of contractual language that is "clear and unambiguous." *Id.* at 275–76 (citation omitted). An insurance policy "must be construed in its plain and ordinary sense, and the policy must be read in its entirety." *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1, 24 (2014). A term is not ambiguous merely because an

insurance policy does not provide a specific definition. *See Heebner v. Nationwide Insurance Enterprise*, 818 F.Supp. 2d 853, 857 (E.D. Pa. 2011) (applying Pennsylvania law). Where a term is not specifically defined, courts "apply the common law definition historically used by the courts of this Commonwealth and apply it to the facts of the case." *Wall Rose Mut. Ins. Co. v. Manross*, 939 A.2d 958, 965 (Pa. Super. 2007). This is consistent with the general canon of contract interpretation that "words of 'common usage' in an insurance policy are to be construed in their natural, plain and ordinary sense. *Id.* at 962.[6]

Ms. Walker's argument here faces an interpretative hurdle that derives from her failing to elect "Coverage B – Other Structures." The Policy's Premises Liability coverage applies to property damage caused by "an accident on your premises" where the property damage "occurs on your premises." The "premises" are defined as:

1. The dwelling and other structures that are described on the Declarations Page;
. . .
3. The grounds that are immediately adjacent to that dwelling and other structures.

As noted above, the Policy did not provide "Coverage B" for structures, and no structures are identified on the Declarations Page.

The question then becomes whether, absent a specific designation in the Policy a fence or a tree nonetheless qualifies as an "other structure" under subparagraph 3, making the ground

---

[6] Plaintiff argues that the "reasonable expectations" doctrine applicable to non-commercial insurance contracts should apply to the Policy at issue here. *See, e.g., Pressley v. Travelers Prop. Cas. Corp.*, 817 A.2d 1131, 1141 n.3 (Pa. Super. 2003) (listing Pennsylvania Supreme Court cases that applied it to "non-commercial insureds"). There is some ambiguity as to whether a residential landlord policy should be viewed as "commercial" or non-commercial" for the purposes of the reasonable expectations doctrine. But because I find below that the terms of the contract are clear and unambiguous as to coverage for the accident, I do not need to look beyond the contract to the reasonable expectations of the insured. *See Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 440 (3d Cir. 2006) ("[T]he District Court's refusal to look beyond the plain meaning of the unambiguous exclusionary language to [the insured's] reasonable expectations is consistent with the interpretation of Pennsylvania case law in our Circuit.").

"immediately adjacent" to them part of the "premises" covered by the policy. Plaintiff focuses on the fact that when the Policy defines the "premises" it utilizes the term "other structures" twice, once with a restrictive limitation that follows the term— "[t]he dwelling and other structures that are described on the Declarations Page" (emphasis added)—and once without the succeeding limitation—"[t]he grounds that are immediately adjacent to that dwelling and other structures." But this is neither contradictory nor ambiguous, for in the second definition, a limiting relative pronoun precedes the full phrase of "dwelling and other structures," specifically: "[t]he grounds that are immediately adjacent to *that* dwelling and other structures." (emphasis added). The word "that" functions as a pointing word to refer the reader back to the antecedent "dwelling and other structures that are described on the Declarations Page." In the Policy, the Declarations Page does not describe any "other structures," so that neither "fences" nor "trees" are listed. Consequently, neither "fences" nor "trees" can fall within "*that* dwelling and other structures." There is therefore no support for an interpretation that uses the fence and "the grounds that are immediately adjacent to" as the basis for extending the policy to the Neighboring Property. [7]

Because I have found that neither the tree nor the fence post would constitute an "other structure" under the Policy's definition of "premises," Plaintiff can only look to the dwelling itself as the anchor for invoking the "immediately adjacent to" language in her attempt to expand the definition of premises. She argues that the location of the damage to the Neighboring Property was "immediately adjacent" to her rental dwelling and should therefore be considered part of the insured premises. Looking to the dictionary to interpret "adjacent," Merriam-

---

[7] I note that the "fences" are expressly excluded from "Coverage A – Dwelling," which implies that "fences" are contemplated in the Policy as something distinct from dwellings and their specific inclusion or exclusion from coverages is intentional and meaningful. As to trees, there are specific provisions pertaining to them under Coverage A.

Webster's first definition is "not distant: NEARBY," with an example of "the city and adjacent suburbs," and its second definition is "having a common endpoint or border," with an example of "adjacent lots." But the term "adjacent" in the policy is modified by the term "immediately." Thus, to give effect to "immediately," the Policy must be constructed as "immediately adjoining" or "immediately contiguous." Although Pennsylvania courts have not addressed such a turn of phrase, other courts interpreting insurance policies have found that "the words 'immediately adjacent,' as used in the insurance policy under construction, have the same natural significance as the words 'immediately adjoining.' Unless such construction be adopted, the word 'immediately' in the present context would have no practical effect." *Long v. London & Lancashire Indem. Co. of Am.*, 119 F.2d 628, 630 (6th Cir. 1941); *see Pickens v. Maryland Cas. Co.*, 2 N.W.2d 593, 595 (Neb. 1942) ("But, when qualified by the adverb 'immediately,' [adjacent] necessarily means 'contiguous' or so close to the other object as to be almost in contact with it."); *see also Banana River Properties v. City of Cocoa Beach*, 287 So. 2d 377, 381 (Fla. 4th Dist. App. 1973) (interpreting the phrase in the context of zoning ordinances and citing then contemporary cases from North Carolina, Wisconsin, and New Mexico).

The dwelling on the Insured Property is clearly not "immediately adjoining" to where the tree fell and caused damage. According to measurements of the site stipulated to by both parties, there was at least 54 feet of land between the dwelling and the tree that fell. ECF 26-3.[8] The tree itself was another 8 feet from the fence, and the fence another 11 to 21 feet from the neighbor's pool where much of the damage was done. *Id.* Ample land, natural features, and artificial

---

[8] The distance between the dwelling and the tree is likely greater. The surveyor measures the lot as 275 feet in depth. ECF 36. It is not clear from the drawing submitted by the parties whether the 54-foot measurement that ends at the tree begins at the dwelling, at the driveway behind the dwelling, or at the large parking lot behind the dwelling. The stipulated measurement drawing puts the dwelling near the very front of the lot, with the tree at 52 feet from the back of the lot. ECF 26-3.

features, including a driveway and a multi-car parking area, intervened between the dwelling and the location where the damage occurred. Given this physical distance, I conclude as a matter of law that the location of damage in the Neighboring Property is not "immediately adjacent" to the dwelling and therefore part of the "premises" of the Insured Property. I note that such a construction of the policy is consistent with common sense, as it would be a peculiar result to define premises under an insurance policy in a manner that ignores property lines.

    B.  <u>Count II (Bad Faith)</u>

Plaintiff cannot succeed on her claim of bad faith under 42 Pa. C.S.A. § 8371. "[T]o recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack of a reasonable basis." *Rancosky v. Washington Nat'l Ins. Co.*, 642 Pa. 153, 170 A.3d 364, 365 (2017). Because I have found that the insurer here was not obligated to cover the Plaintiff for the disputed claims, by definition the insurer had a reasonable basis to deny the benefits. *See USX Corp. v. Liberty Mutual Ins. Co.*, 444 F.3d 192, 202 (3d Cir. 2006).

    C.  <u>Count IV (Negligence Claim against Defendant Tucker)</u>

Finally, I find that no genuine dispute of material fact exists as to the negligence claim against Defendant Debra Tucker and conclude that she is entitled to judgment as a matter of law. Plaintiff's claim against Ms. Tucker is that Tucker owed Walker a duty to explain the four corners of the Policy, and alert her to the absence of coverage for an accident such as this. Significantly, there is no allegation that Ms. Tucker was a broker retained by Ms. Walker. To the contrary, the parties have stipulated that she was an agent for Foremost. ECF 26, ¶5. In fact, the record reflects that Tucker did not even sell the policy initially, but merely serviced it. Pltf's

Resps. Req. Adm. ¶ 6, Ex. A to Def. Mot., ECF 25-1. And there was never any communication of substance between Tucker and Plaintiff's daughter, who managed the property on Plaintiff's behalf.[9]

As a general matter under Pennsylvania law, it is presumed that "parties act at arm's-length when negotiating insurance contracts." *Willow Inn, Inc. v. Pub. Serv. Mut. Ins. Co.*, 399 F.3d 224, 235 (3d Cir. 2005). "[A]n agent typically does not incur a fiduciary duty by selling a policy to an insured." *Dixon v. Nw. Mut.*, 146 A.3d 780, 787 (Pa. Super. 2016). The Pennsylvania Supreme Court recently declined to create such a duty as to insurance agents, expressly noting that "[w]e decline to modify the law of fiduciary duty to encompass the particular pitfalls involved in the sale of insurance products by commissioned agents or financial advisors to less savvy customers." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 824 (Pa. 2017).

Ms. Walker relies on expectations set forth in her affidavit opposing summary judgment, but those expectations do not comport with any obligation recognized by Pennsylvania law.

### IV. Conclusion

Unfortunately for Ms. Walker, she has a gap in coverage. But the arguments she advances do not provide a basis for relief. I am therefore obligated to grant Defendants' Motion for Summary Judgment in full and deny Plaintiff's Motion for Summary Judgment. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[9] "Mrs. Robertson does not recall ever speaking to Ms. Tucker prior to the incident involving damage to her property and to the neighbor's property. If Mrs. Robertson had supplied any information to Ms. Tucker or her staff in 2019, it would have simply been a confirmation that the information regarding the Property had not changed." Pltf's Resps. Req. Adm. ¶ 6, Ex. A to Def. Mot., ECF 25-1.